## Taylor's Devisee *against* Owing and Others.

An entry, calling for the land to lie on the east side of Slate creek, a southwest branch of the main fork of Licking, " beginning where a buffalo road crosseth said creek at the mouth of a branch empty-ing into said creek at the northeast side, it being the place of be-ginning for S. M.'s entry of 20,000 acres," is defective in certain-ty and precision ; and its defects are not aided by the reference to S. M.'s entry for " 20,000 acres, lying on the west side of Slate creek, southwest branch of the main fork of Licking creek, begin-ning where the buffalo road crosses Slate creek, at the mouth of a branch, emptying in on the east side thereof; there are several ca-bins," &c. " to include a large quantity of fallen timber," &c.

*Feb. 11th.*  THIS cause was argued by Mr. *Talbot,* for the appellant, and by Mr. *Trimble,* for the respon-dents.

*Feb. 22d.*  Mr. Chief Justice MARSHALL delivered the opi-nion of the Court.

The appellant filed a bill in the Circuit Court of the United States for the District of Ken-tucky, praying a conveyance of a tract of land for which the defendants had obtained elder pa-tents, and which the plaintiff claimed in virtue of a prior entry, which was made on the 6th of Ja-nuary, 1783, and is in these words: " James Taylor enters 12,000 acres of land on ten trea-sury warrants, No., &c.: to be laid off in one or more surveys, lying on the east side of Slate

1826.

Taylor's Devisee

v.

Owing.

creek, of southwest branch of the main fork of Licking; beginning where a buffalo road crosseth said creek at the mouth of a branch emptying into said creek on the northeast side, it being the place of beginning for Samuel Meredith's entry of 20,000 acres; running from thence with said Meredith's line down Slate creek, binding with the same the distance of three miles when reduced to a straight line from the beginning to his lower corner; thence continuing down the east side of Slate creek, binding with the same as far as will amount to three miles when reduced to a straight line from Meredith's lower corner; thence extending from each end of this reduced line of six miles a northeast course, and continuing said course until a line at right angles to the same shall include the quantity of vacant land, exclusive of all legal prior claims."

The entry of Meredith was made on the 30th of November, 1822, and is in these words: " Samuel Meredith enters 20,000 acres, lying on the west side of Slate creek, southwest branch of the main fork of Licking creek; beginning where the buffalo road crosses Slate creek, at the mouth of a branch emptying in on the east side thereof; there is several cabins on said running from the beginning down Slate creek, and binding thereon as far as will amount to three miles when reduced to a straight line; then from the beginning running up Slate creek, and binding thereon as far as will amount to three miles when reduced to a straight line from the beginning, to include a large quantity of fallen

timber; and then to extend from the upper and lower end of these lines on the bank of Slate creek, a west course, until a line running due south and north shall include the quantity of vacant land required to be laid off in one or more surveys."

The defendant contends, that this entry is invalid, because it does not describe the land it seeks to appropriate with such certainty as to enable a subsequent purchaser to avoid it, and to locate the adjacent residuum.

The land is to lie on the east side of Slate creek, a southwest branch of the main fork of Licking. Slate creek was well known by this name, but it is a stream of considerable extent, and the law requires, that the particular part of it on which Taylor's land is placed, should be designated so specially and precisely, that a subsequent locater, using due diligence, and possessing ordinary intelligence, might appropriate the adjoining vacant lands. The plaintiff contends, that this certainty is to be found in the description of Taylor's place of beginning. It is in these words: " Beginning where a buffalo road crosseth said creek, at the mouth of a branch emptying into said creek on the northeast side, it being the place of beginning for Samuel Meredith's entry of 20,000 acres."

It is the plain dictate of good sense, which is supported by the whole current of decisions in Kentucky, that an entry, to satisfy the law, must describe the place with sufficient accuracy to be found and known by others, and in terms which

will not fit other places equally well with that intended to be appropriated.

The particular descriptive words, or, in the technical language of the country, the locative calls of the entry, are a buffalo road crossing Slate creek at the mouth of a branch emptying into the creek on the northeast side, and Meredith's beginning. The plaintiff contends, that these words describe the mouth of Little Slate creek.

Little Slate is a creek which empties into Slate on its northeast side, some say 30 or 40, others 50 or 60 miles, by the meanders of that stream above its mouth. The whole length of Slate is not mentioned by the witnesses, but it is sufficiently apparent, that its source is a considerable distance above its mouth. Two creeks, Little Slate, and Mile creek, Roe's run, and several branches, empty into it on the northeast side, and it is crossed by numerous buffalo traces, some of which are not far from the mouths of four streams, though no one is so near as that just below the mouth of Little Slate. The crossing place near that creek is stated to be ten or twelve yards below its mouth, by some of the witnesses, and by others to be rather more.

The objections made to this entry, are not only that it is vague, but that it is calculated to mislead. It calls for a buffalo road crossing the creek at the mouth of a branch emptying into it on the east side. This trace is said to be so small as not to be generally denominated a road. The traces made by buffaloes are stated to be

of various dimensions, from three to ten or twelve feet wide, and sometimes wider. This near the mouth of Little Slate is about a foot wide, and is nearly lost in the bottom. It is represented by some of the witnesses rather as a deer path than a buffalo road. These traces have been called, by the inhabitants, roads, traces, and paths. Some of the witnesses · say, that these names are used indiscriminately; others, that they designate larger or smaller routes; the word " road" being applied to a large trace, and " path" to a small one; that the trace at the mouth of Little Slate would never have been spoken of as a road,

Although the distinction between a road and a path is common throughout our country, yet, the Court must have supposed, that it was not taken in Kentucky in reference to the traces of buffaloes, had the witnesses concurred in making this declaration. But they have not concurred in it. Many of them aver, that the distinction is as applicable to tracts of this description as to others, and is in as common use. The Court, therefore, cannot avoid supposing, that a subsequent locater, finding this small path near the mouth of Little Slate, and understanding that there were considerable roads near the mouths of other streams, would think that this could not be the road required by Taylor's entry.

There is a still more important variance in the character of the stream itself. The entry calls for a branch, and Little Slate is a considerable creek. It could scarcely be mistaken for what

is denominated a branch; and a subsequent lo-
cater, intending to lay his warrant at this place,
could not reasonably suppose, that it was already
appropriated by an entry professing to begin at
the mouth of a branch. In argument, the counsel
for the plaintiff has sought to get over this diffi-
culty by varying the language of his entry. He
treats the question as if the entry had called for
a branch of Slate creek, and shows that Little
Slate fits this call. The argument would have
been strong had the language of the entry sustain-
ed it; but the words are, " the mouth of a branch
emptying into Slate." The difference between
" a branch of Slate," and " a branch emptying
into Slate," is obvious.

There is still a farther difficulty which the
plaintiff must encounter in this part of his case.
It is alleged, that Little Slate was the notorious
name of the stream when Taylor's entry was
made. It is well settled in Kentucky, that if ob-
jects called for in an entry are distinguished by
a known name, it is a serious defect to call for
them by a name which they possess in common
with other similar objects, instead of their appro-
priate name. If, then, the fact be, that when
Taylor's entry was made, Little Slate had its ap-
propriate name, the locater ought to have used
that name, and his substituting in its place the
general call for " a branch emptying into Slate
on the northeast side," constitutes a serious ob-
jection to the entry, which would require the aid
of other words describing the place with greater
certainty.

The testimony on this point is not perfectly clear. Elias Folin says, that, so early as 1775, he was one of a company that made improvements on that stream, and they called it Slate.

George Balla was also one of a company of improvers who encamped on Little Slate in 1776, and knew it then by that name. He knew it by the same name in 1783.

Isaac Clinkerhead knew Little Slate by that name in 1784, and thinks he heard it so called in 1782.

Ralph Morgan says, that Little Slate was well known by that name in 1782.

William Williams has frequently heard hunters speak of Little Slate as a place of notoriety, previous to November, 1782, when Meredith's entry was made.

John Lix was with a company of hunters on Little Slate in 1776, when John Clarke gave the stream the name of Little Slate, and he has never known it by any other.

George Balla knew Slate, and Little Slate, by those names, in 1776.

Joseph M'Intire knew those streams by their present names in 1782.

These witnesses certainly prove, that Little Slate was known by that name ve y extensively in 1782 and 1783, when the entri s of Meredith and Taylor were made. It had, undoubtedly, acquired that name completely in 1786. A shade of doubt is cast on the general notoriety of this name, by the circumstance, that several witnesses who speak of the stream as known to them at

this early period, and who distinguish it by its proper name, do not say that they then knew it by that name.

James M'Millan became acquainted with Little Slate in 1781, Joseph Young in the fall of 1783 or 1784, and Roger Clements in 1783. Neither of these witnesses say they knew it then by that name. They do not, indeed, say the contrary; but the probability is, that had they then known the stream by its present name, they would have been interrogated to the point. There is, then, much reason to believe, that Little Slate had then acquired its appropriate name, and ought to have been so designated by the locater, though the proof is not conclusive.

Upon the whole, we think it very clear, that Taylor's land is not described with sufficient certainty by the call, "to begin where a buffalo road crosses Slate at the mouth of a branch emptying into said creek on the northeast side." Is this defect remedied by the call for Meredith's beginning?

This reference to Meredith's entry makes it a part of Taylor's, and will give the latter the advantage of any certainty of description which may be found in the former. Samuel Meredith calls to begin "where *the* buffalo road crosses Slate creek at the mouth of a branch emptying in on the east side thereof; there is several cabins on said ———." The entry is to include a large quantity of fallen timber.

It will be perceived, that the descriptive, or lo-

cative calls of this entry, vary from those in Taylor's in these respects only. In describing the buffalo road, Meredith uses the article "the;" and he likewise adds to his description, that there are several cabins, either on the creek or on the branch, (for the word is not in the record;) we suppose on the branch, and that his location will include a large quantity of fallen timber.

The objection made to Taylor's entry in consequence of the smallness of the trace crossing Slate near the mouth of Little Slate, applies with increased force to this part of Meredith's. The words, "the buffalo road," if they do not indicate a single road, would, unquestionably, lead a person in search of this entry, to expect a remarkable and conspicuous road; such a road as crossed Slate near the mouth of Long branch, or Roe's run, not such a narrow path as crossed near the mouth of Little Slate.

The cabins alluded to in Meredith's entry, were not found on Long branch. They were found on Roe's run, and Mile creek. The weight of testimony is, that no unusual quantity of fallen timber would be included in Meredith's survey if the beginning is at Little Slate, but would be included in it if the mouth of Roe's run be taken as the beginning. The two additional circumstances, then, the cabins and the fallen timber, are found, one of them on Little Slate, and not on Long branch, which, but for that defect, would fit the description in the entry better than any other, and the other opposite Roe's run, and

not opposite Little Slate. The objection to Roe's run, and Mile creek, is, that the buffalo road cannot be considered as crossing *at* the mouths of either of them.

Since, then, no place is shown which fits precisely the description of the entry, we must inquire whether that description is so nearly satisfied by appearances at the mouth of Little Slate, as to induce the Court to establish the title of the plaintiff.

The objections which have been stated to Taylor's entry are certainly not removed by calling in the aid of Meredith's. Passing by the increased strength they derive from the emphatic words " *the* buffalo road," and from the absence of " a large quantity of fallen timber," we will inquire whether the appearance of cabins on Little Slate will cure the other defects of description in the entry. This circumstance was too common in that country to be itself an object of notoriety. Cabins were seen on Roe's run and Mile creek, streams which empty into Slate on the northeast side, as well as on Little Slate. Their absence may exclude Long branch from the competition, but cannot decide in favour of Little Slate, unless other circumstances concur in its favour.

To the objections already mentioned, others may be added which appear to us to be insurmountable.

The entry is to begin on Slate creek, where it is crossed by a buffalo road at the mouth of a branch emptying into the creek on the northeast

side.   Twelve or fifteen buffalo roads cross the creek, and five, or six, or more streams, empty into it on its northeast side.   The creek is seventy or eighty miles in length.   In what part of it is the subsequent locater to look for this road and this branch ?   It is not alleged that either of them possessed any notoriety which could conduct the person in search of them to any particular part of the creek.   Can he be required to search from its mouth to its source ?   At which is he to commence ?   If at neither, but at the mesne point between them, is he to look up or down the creek ?   If he should accidentally strike the creek at the mouth of Little Slate, he finds a creek instead of a branch, and a path instead of a road.   The place does not suit the description in the entry.   Some of the witnesses say, that no other place suits it as well.   Were this admitted to be true, how is he to know it until he examines the whole extent of the creek ?   This would be, undoubtedly, if we regard the decisions in Kentucky, to impose an unreasonable burden on subsequent locaters, one which the law could not intend to impose on them.

We think, that the entry under which the plaintiff claims cannot be sustained, and that there was no error in dismissing his bill.

Decree affirmed, with costs.